IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW THOMAS McLAIN,                    Case No. 3:08-cv-01440-KI

          Petitioner,                    OPINION AND ORDER

    v.

SHARON BLACKETTER,

          Respondent.

TONIA L. MORO
Assistant Federal Public Defender
15 Newtown Street
Medford, OR 97501

    Attorney for Petitioner

JOHN R. KROGER
Attorney General
ANDREW D. HALLMAN
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Respondent

KING, Judge

    Petitioner Matthew Thomas McLain, an inmate at the Eastern

Oregon Correctional Institution, brings this habeas corpus

1 - OPINION AND ORDER

proceeding pursuant to 28 U.S.C. § 2254.  On September 26, 2011, I
issued an Opinion an Order, determining that petitioner had
exhausted his available state remedies as to grounds eight and nine
(limited to certain subparts), and denying relief on all other
grounds.  (#58.)  I then ordered the parties to submit briefing on
the merits of grounds eight and nine.  After careful consideration
of that briefing, and for the reasons set forth below, the petition
is denied, and this proceeding is dismissed.

### BACKGROUND

On June 22, 2000, petitioner was indicted on three counts of
Sexual Abuse in the First Degree involving his step-son "B.S," a
boy under the age of 14.  Resp. Ex. 102.  Petitioner proceeded to
trial on October 17, 2000, where the jury heard evidence over four
days.

B.S., who was 13 years old at the time of trial, testified at
length.  B.S. testified that he had been living with his biological
father when his mother married petitioner.  B.S. testified that in
the summer of 1999, he began living with his mother and petitioner
full-time.  B.S. testified that after he began living with his
mother, petitioner began giving him "tummy rubs," that the tummy
rubs occurred often, and at various places throughout the house.
B.S. testified that petitioner told him the tummy rubs were because
petitioner loved B.S.  Tr. 119.  B.S. testified that sometime
later, petitioner began rubbing his leg when petitioner tucked B.S.

2 - OPINION AND ORDER

into bed.  B.S. described that initially petitioner rubbed the outside of his leg, and later petitioner began sweeping his arm back and forth across B.S.'s "private parts," and that the sweeping motion made B.S. "really, really uncomfortable." Tr. 121.  B.S. testified that petitioner made the sweeping motion across his private parts more than 10 times.

B.S. also testified that petitioner rubbed B.S.'s private parts for approximately five minutes over B.S.'s clothing at least 15 times.  B.S. also indicated that petitioner had B.S. rub his own penis or that they would take turns rubbing B.S.'s penis, and that petitioner told him it was normal for boys to rub themselves.  Tr. 128.  B.S. testified that most of the instances of sweeping or rubbing occurred in his bedroom, but that they sometimes happened in the living room.  B.S. stated that petitioner attempted to touch him in the kitchen, but B.S. stopped him.

B.S. testified that one time, B.S. and petitioner were doing some work at a church in a nursery, and that petitioner did the sweeping motion over his private parts when they were alone at the church.

B.S. further testified that on one occasion, he awoke in his bedroom and found petitioner with petitioner's hand in B.S.'s pajamas touching B.S.'s penis.  Tr. 126-27.  B.S. testified that he yelled at petitioner to "stop it" and that petitioner stopped and left B.S.'s bedroom.  Tr. 127.

B.S. testified that one night after petitioner had been drinking heavily, his mother asked him whether petitioner had ever done anything to him. B.S. stated that he reluctantly told his mother about the rubbing and sweeping, and that petitioner had instructed B.S. not to tell his mother because his mother would divorce petitioner. B.S. stated that he then talked to the police, and was interviewed at CARES Northwest (CARES), a child abuse evaluation clinic.

B.S.'s mother, Andrea Smith, testified at trial. Smith testified that petitioner began living with her in January of 1999, that she married petitioner in April of 1999, and that B.S. began living with her full-time in June of 1999. Tr. 155-56, 193. Smith confirmed that after she tucked B.S. into bed, petitioner would remain in B.S.'s room and talk to B.S. Tr. 158-59.

Smith testified that in March of 2000, petitioner and B.S. did some work together at the New Song community church in Sylvan. Smith testified that on Thursday, April 28, 2000, following an argument with petitioner, she asked B.S. whether petitioner had ever touched B.S. in a way that made B.S. uncomfortable. Smith testified about B.S.'s disclosure of abuse, and her testimony confirmed B.S.'s description of petitioner's conduct. Smith further testified that the following day, she called a friend, an attorney, her pastor, and eventually the police.

4 - OPINION AND ORDER

The jury heard testimony from Kathleen Shelton, a pediatric nurse practitioner, who works at CARES.    Tr. 215.    Shelton testified that she examined B.S. at the CARES facility on May 15, 2000.  She testified that B.S. refused to allow Shelton to examine his male genitalia and anus.    Shelton testified that her examination of B.S. and the disclosures made to her by B.S. were "concerning for sexual abuse."  The jury also viewed a videotaped interview between Kathy Kroger, a CARES nurse, and B.S. made at the CARES facility.

The jury heard from Officer Danial Park, an officer from the Beaverton Police Department.  Officer Park testified that on April 28, 2000, he interviewed Andrea Smith and B.S. after Smith reported the alleged sexual abuse to the Beaverton Police Department.  Park then interviewed B.S. about the allegations against petitioner. Park testified that B.S. informed him that petitioner began by rubbing his tummy, then B.S.'s thigh, and then B.S.'s private area. Park testified that B.S. told him that petitioner informed B.S. that petitioner's behavior was normal, and that B.S. should not tell his mother because the mother would divorce petitioner.    Tr. 268.    Park testified that B.S. informed him that petitioner had been engaging in that activity for approximately nine months, and B.S. told him that the skin-on-skin contact had happened one week earlier.

The jury heard from Detective Daniel Kelly of the Beaverton Police Department.  Detective Kelly investigated the allegations of sexual abuse against petitioner.  Kelly testified that he informed petitioner about the abuse allegations, and that petitioner initially refused to speak with him.  Kelly stated that later, petitioner contacted him several times concerning the investigation.  Kelly testified that he supplied Smith with a recording device to record telephone conversations between Smith and petitioner.

The jury heard from James Andrew, the pastor of the New Song community church in Sylvan where petitioner and B.S. worked. Andrew testified that he had counseled Smith and petitioner on three occasions in the spring of 2000.  Andrew testified that in March of 2000, petitioner performed some light remodeling work at the church, and that on at least one occasion, B.S. assisted petitioner.  Andrew also testified that in April of 2000, he received three phone calls from Smith, who was distressed about the allegations of abuse that B.S. made to Smith concerning petitioner. Andrew testified that he informed Smith that she needed to inform the police, and that he assisted Smith in contacting the police. Tr. 315-16.

Petitioner's counsel re-called two witnesses for the defense, Detective Kelly and Andrea Smith.  Petitioner did not testify.

After deliberating for nearly four hours, the jury convicted petitioner of all three counts.  Petitioner was sentenced to 225 months, and 10 years of post-prison supervision.

Petitioner directly appealed his conviction.  The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review.  Resp. Exs. 105 & 107.

Petitioner filed a state post-conviction proceeding, alleging numerous claims of ineffective assistance of counsel.  The post-conviction court denied all relief.  Resp. Ex. 136.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  McLain v. Blacketter, 221 Or. App. 702, 191 P.3d 813, rev. denied, 345 Or. 417 (2008).

## DISCUSSION

In ground eight, petitioner alleges that trial counsel was ineffective for failing to object to the expert testimony of Nurse Kathleen Shelton as impermissible vouching and because it was more prejudicial than probative.  In ground nine, petitioner alleges that trial counsel was ineffective for failing to challenge and object to prosecutorial misconduct when:  (1) counsel failed to prevent the state from eliciting testimony and commenting on petitioner's pre-arrest silence after he was confronted with the accusations by Detective Kelly; and (2) counsel failed to prevent the state from appealing to the fears and emotions of the jury by calling for a guilty verdict to vindicate B.S.'s rights and give

him justice.    Respondent moves to deny habeas corpus relief on the basis that the state court's rejection of petitioner's claims for relief is entitled to deference.    Respondent is correct.

I.    **Standards**.

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under Strickland v. Washington, to prevail on a claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  466 U.S. 668, 687 (1984); Bell v. Cone, 535 U.S. 685, 698-99 (2002); Williams v. Taylor, 529 U.S. 362, 390 (2000).  Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance.  Id. at 689.

Reasonableness is determined as of the time of counsel's conduct, not in hindsight. Id. at 689-90.

To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell, 535 U.S. at 695; Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams, 529 U.S. at 391 (quoting Strickland, 466 U.S. at 694).

Petitioner presents no new evidence in this proceeding and asserts no defect in the state post-conviction process. This court reviews the state court's ultimate conclusion to ascertain whether it is contrary to or an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005). Thus, the state court's application of Strickland must be more than simply incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); 28 U.S.C. § 2254(d)(1). To obtain habeas relief, a petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011). When Strickland's general standard of deference is combined with the standard of review governing

9 - OPINION AND ORDER

§ 2254 habeas corpus cases, the result is a "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

## II.  **Analysis**.

### A.  **Ground Eight - Nurse Shelton's Testimony**.

At trial, Kathleen Shelton testified that she met with B.S. on May 15, 2000 at CARES, and that B.S. had been referred to CARES by Detective Kelly.  Tr. 226.  Shelton described the routine that CARES undertakes when a child is referred to the clinic, typically following a disclosure of inappropriate touching or sexual activity.  Tr. 218-222.  Shelton explained that in this instance, she reviewed a medical history CARES obtained from the B.S.'s family, documents from the State of Oregon Services to Children and Families (SCF), and a report from the Beaverton Police Department prior to conducting an interview with B.S.  Tr. 226.

Shelton testified that she performed a head-to-toe medical examination of B.S., but that B.S. refused examination of his genitalia and his anus.  Shelton described B.S.'s physical examination as normal.  Shelton then testified that during her interview with B.S., B.S. described how petitioner touched his tummy, then his privates, and then the side of his leg.  Tr. 227-28.  Shelton stated that she then transitioned B.S. to an interview room where Kathy Kroeger, another CARES team member, conducted a more detailed, videotaped interview.  Based on B.S.'s statements,

10 - OPINION AND ORDER

her examination of B.S., the videotaped interview, and the other information in the file, Shelton made a diagnosis of "concerning for sexual abuse":

> Q.    And that conclusion is reached to a reasonable medical certainty?
>
> A.    Yes.
>
> Q.    A person might say, well, how can you make a reasonable medical certainty conclusion when what information you have basically is that which is provided to you by the child during the course of your examination . . .?
>
> A.    Well, reasonable medical certainty means that given an examiner with similar experience, education, and training, they would reach the same conclusion if they had the same information.
>
>        It's possible to make a medical diagnosis based on an encounter with a child because they, for the most part, are very accountable. . . . So children are quite capable of telling you what happened and giving you information about their medical conditions.
>
> Q.    Now, in this particular case, did you find it concerning or important that the allegations involved [B.S.'s] stepfather touching the child and yet the child wouldn't let you examine his genitals?
>
> A.    Yes. The refusal was information in an of itself. . . . So in this case, it was pretty telling that there was a reason [B.S.] adamantly refused, despite all of the measures that we allow other children to cooperate.  Tr. 229-32.

At post-conviction, petitioner argued that Shelton's testimony was impermissible "vouching" because Shelton testified that B.S. was being truthful.  Petitioner's trial attorney submitted an

affidavit in the PCR proceeding in which he stated that Shelton's testimony did not constitute vouching, and that her diagnosis of abuse was to a medical certainty, and thus not objectionable at the time under Oregon law.    Resp. Ex. 133, p. 7.    The PCR court rejected petitioner's ineffective assistance of counsel claim.

Petitioner now maintains that at the time of petitioner's trial, because there was no physical evidence of abuse, the admissibility of Nurse Shelton's diagnosis was an open question under Oregon law, and that trial counsel was ineffective when he failed to object to her testimony.    Petitioner relies on <u>State v. Southard</u>, 347 Or. 127, 142, 218 P.3d 104 (2009).    In <u>Southard</u>, the court determined that a medical diagnosis of sexual abuse is scientifically valid evidence.    <u>Id.</u> at 140.    However, the court determined that the probative value of the medical diagnosis is outweighed by the risk of prejudice where there is no *physical evidence* of abuse:

> Our holding today is narrow.  The only question on review
> is whether a diagnosis of "sexual abuse" –*i.e.*, a
> statement from an expert that, in the expert's opinion,
> the child was sexually abused – is admissible in the
> absence of any physical evidence of abuse.  We hold that
> where, as here, that diagnosis does not tell the jury
> anything that it could not have determined on its own,
> the diagnosis is not admissible under OEC 403.  <u>Southard</u>,
> 347 Or. at 142.

Petitioner reasons that because the <u>Southard</u> decision did not overrule prior law or announce a new rule, <u>Southard</u> was simply applying existing law.    According to petitioner, because the

12 - OPINION AND ORDER

admissibility of Shelton's testimony was less than certain, trial counsel rendered deficient performance when he failed to object to her diagnosis of abuse. I disagree.

Petitioner's argument that the admissibility of Shelton's testimony was an open question under Oregon law at the time of his 2000 trial was soundly rejected in Umberger v. Czerniak, 232 Or. App. 563, 222 P.3d 751 (2009)(per curiam), rev. denied, 348 Or. 13 (2010); accord Hatchett v. Hill, 2011 WL 7443755, *8-9 (D. Or. Dec. 21, 2011), adopted, 2012 WL 673767 (D. Or. Feb. 29, 2012).

In Umberger, the Oregon Court of Appeals rejected an inadequate assistance of counsel claim where counsel failed to challenge an expert's qualifications and testimony at Umberger's trial for sodomy and sexual abuse. Umberger, 232 Or. App. at 564. The Umberger court determined that at the time of Umberger's 1998 trial, "the rule regarding expert testimony as to a diagnosis of child sexual abuse was exemplified in State v. Wilson, 121 Or. App. 460, 465-66, 855 P.2d 657, rev. denied, 318 Or. 61 (1993)." The Umberger court noted that under Wilson, a diagnosis of child sexual abuse by an expert was admissible, even where there was no physical evidence of abuse. Umberger, 232 Or. App. at 564. Continuing, the Umberger court concluded that it was not until the Southard decision in 2009 that the Oregon Supreme Court held differently. Therefore, the Umberger court concluded that trial counsel was not ineffective under either state or federal law because the expert's

13 - OPINION AND ORDER

testimony was admissible at the time of Umberger's 1998 trial.  <u>Id.</u>
at 565.

> To render assistance that is constitutionally adequate,
> trial counsel need not be clairvoyant.  Given the state
> of the law prior to <u>Southard</u>, petitioner's trial counsel
> did not fail to exercise reasonable professional skill
> and judgment at petitioner's 1998 trial when counsel
> failed to object to [the state's experts] qualifications.

<u>Id.</u>; <u>Balogh v. Howton</u>, 233 Or. App. 614, 615, 227 P.3d 757
(2010)(*per curiam*), <u>rev. denied</u>, 348 Or. 461 (2010)(same).

While petitioner contends that <u>Umberger</u> incorrectly determined
that <u>Southard</u> was a new interpretation of state law, it is not for
a federal habeas court to disagree with a state court's
interpretation of state law.  <u>See, e.g.</u>, <u>Estelle v. McGuire</u>, 502
U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas
court to reexamine state-court determinations on state-law
questions."); <u>Mendez v. Small</u>, 298 F.3d 1154, 1158 (9th Cir.
2002)("A state court has the last word on the interpretation of
state law.")

Moreover, this court has rejected the same arguments now posed
by petitioner.  <u>Hatchett</u>, 2011 WL 7443755, at *8-9.  In <u>Hatchett</u>,
the petitioner contended that trial counsel rendered deficient
performance when he failed to object to a CARES pediatrician's
diagnosis of sexual abuse and testimony as inadmissible vouching.
<u>Id.</u> at 7.  In <u>Hatchett</u>, Magistrate Judge Coffin rejected the
petitioner's argument that prior to <u>Southard</u>, the admissibility of

14 - OPINION AND ORDER

a sexual abuse diagnosis was an open question. Relying on Umberger, the Hatchett court concluded that at the time of the petitioner's trial, the sexual abuse diagnosis was clearly admissible under Oregon law, and therefore, "counsel was not ineffective for failing to anticipate future developments in the law and specifically the Southard decision." Id. at *9.

I find Hatchett persuasive and its reasoning applicable here.[1] Therefore, I conclude that at the time of petitioner's 2000 trial, Shelton's testimony was admissible under Oregon law, and counsel was not ineffective for failing to object to it.

I likewise reject petitioner's argument that counsel in this case rendered deficient performance when he failed to argue for a beneficial change in the law, relying on Burdge v. Belleque, 290 Fed. Appx. 73 (9th Cir. 2008). Burdge is readily distinguishable. In Burdge, the Ninth Circuit determined that an attorney rendered deficient performance when he failed to challenge the constitutionality of an ambiguous Oregon sentencing statute although the Oregon courts had not interpreted that statute. In

---

[1]Additionally, I am not convinced that this court should follow the rationale in Wells v. Howton, 2011 WL 5999356 (D. Or. Aug. 22, 2011)(Coffin, Mag. J.), adopted, 2011 WL 5999359 (D. Or. Nov. 29, 2011). Wells involved a unique set of facts and a complicated procedural posture in which the petitioner was seeking a new direct appeal. Id. at *1. As discussed above, the facts and procedural posture of this case aligns with Hatchett, and thus I find Judge Coffin's reasoning in Hatchett more persuasive and relevant to the instant case.

Burdge, statutes similar to Oregon's had been successfully challenged for many years in other states. Id. at 77.

Unlike Burdge, the admissibility of Nurse Shelton's diagnosis was not subject to the same type of ambiguity. Umberger, 232 Or. App. at 565; Hatchett, 2011 WL 7443755 at *9; see also Stokke v. Belleque, 2010 WL 330341, *4 (D. Or. Jan. 15, 2010)(distinguishing Burdge on similar grounds). As discussed in Umberger, the Southard decision represented a change in Oregon law. An attorney is not required to anticipate future developments in the law. See Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.), cert. denied, 513 U.S. 1001 (1994)(attorney not ineffective for failing to anticipate a decision in a later case).

To the extent that petitioner also contends that Shelton's testimony and diagnosis were inadmissible vouching, his argument fails. Under Oregon law, a witness may not give an opinion on whether he believes another witness is telling the truth. See, e.g., State v. Middleton, 294 Or. 427, 438, 657 P.2d 1215 (1983); State v. Milbradt, 305 Or. 621, 629, 756 P.2d 620 (1988); State v. Leahy, 190 Or. App. 147, 153, 78 P.3d 132 (2003). For example, in Leahy, the court concluded in a sodomy prosecution that a witness's testimony that "I believe that it most definitely happened exactly the way the victim described it to me" was "tantamount" to a direct comment on the credibility of the victim. 190 Or. App. at 153. And, in Milbradt, a case involving the sexual abuse of two women

16 - OPINION AND ORDER

with mentally disabilities, a psychologist testified that he saw no evidence of deception, and that one of the women could not lie without being tripped up.  305 Or. at 629-30.  There, the court ruled that the testimony was tantamount to an opinion on the victim's credibility.  Id.

However, in this case, I conclude that petitioner has failed to identify any particular portion of Shelton's testimony that can be construed as a direct comment upon B.S.'s credibility.  Unlike Leahy, Shelton did not testify that she personally believed the abuse happened exactly as B.S. described.  And, unlike Milbradt, Shelton did not testify that B.S. was not lying.  Rather, after carefully examining Shelton's testimony, it appears that Shelton described that children generally are accountable and are able to provide information about their medical conditions.  See Middleton, 294 Or. at 1220-21 (finding that admission of testimony describing a typical reaction to sexual abuse was not error).  Even if I were to conclude that Shelton's testimony was impermissible vouching, petitioner certainly has not demonstrated that the PCR court's determination was beyond fair-minded disagreement.  Richter, 131 S. Ct. at 786-87.  Thus, petitioner has not demonstrated that the PCR court's rejection of his claim was objectively unreasonable.

In summary, because Nurse Shelton's testimony and diagnosis were admissible at the time of petitioner's trial, counsel did not

provide deficient performance in failing to object.[2]  <u>Strickland</u>,
466 U.S. at 690; <u>United States v. Bosch</u>, 914 F.2d 1239, 1247 (9th
Cir. 1990)(counsel's failure to object to admissible evidence was
not unreasonable or prejudicial); <u>United States v. Fanning</u>, 2010 WL
949614, *6 (D. Or. Mar. 9, 2010).   Accordingly, I find that
petitioner has failed to demonstrate that the PCR court's rejection
of his ineffective assistance claim set forth in ground eight was
contrary to, or an unreasonable application of <u>Strickland</u>.   28
U.S.C. § 2254(d).

**B.   Ground Nine – Prosecutorial Misconduct.**

In  ground  nine,  petitioner  asserts  that  trial  counsel
rendered  deficient  performance  by  failing  to  object  to  the
prosecutor's  closing  argument  in  two  instances:  (1)  noting
petitioner's pre-arrest silence after he was confronted with the
accusations by Smith and Detective Kelly; and (2) appealing to the
fears and emotions of the jury and calling for a guilty verdict to
give the victim justice.  Respondent contends that state court's
rejection  of  ground  nine  was  reasonable  and  is  entitled  to
deference.

////

////

---

[2]Because petitioner has not established deficient
performance, I decline to address the prejudice prong of his
ineffective assistance claim in ground eight.  <u>Strickland</u>, 466
U.S. at 697.

**1. standards**

To obtain habeas relief based on trial counsel's ineffectiveness in failing to object to a prosecutor's actions, petitioner must show that the prosecutor committed misconduct and that counsel's failure to object to that misconduct violated the standards of Strickland. Evaluating allegations of prosecutorial misconduct in a habeas case, the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Tak Sun Tan v. Runnels, 413 F.3d 1101, 1115 (9th Cir. 2005), cert. denied, 546 U.S. 1110 (2006); Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004).

Additionally, to obtain habeas relief based on trial error, the petitioner must establish actual prejudice, that is, the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S 619, 637-38 (1993). A significant factor in determining prejudicial effects of misconduct is whether the trial court issued a curative instruction. Darden, 477 U.S. at 182. The court presumes that the jury followed the court's instructions absent extraordinary circumstances. Tan, 413 F.3d at 1115.

**2. pre-arrest silence**

Petitioner contends that counsel should have objected the following statements during the prosecutor's closing:

19 - OPINION AND ORDER

When confronted with the allegations in the case, silence.

When confronted with the fact that he lied to the police officer and spread by rumor and innuendo these allegations that New Song is a cult church, that he had asked for a divorce which led to the disclosure, he doesn't say it's a lie. He doesn't say these things didn't happen.

When he asks for money and he is trying to get money on these days, the 6th and 9th of May, remember that at the same time he was having telephone conversations with Detective Kelly. May 15 – "just checking in and want to at least appear cooperative."

May 19 – "just checking in. I'm on suicide watch."

May 22 – "I just want a copy of the CARES report."

May 23 – "just checking in. I want to at least appear cooperative since I had not been earlier."

Why would you want to know from the detective, who is investigating the case, how good a case he had against you? Well –or asking the mother of the child, whom you just abused, for money?

Why would you, in the face of the allegations, not respond vigorously and vehemently if someone had just said to you you had just abused their son?

Tr. Day 4, p. 31-32.

According to petitioner, the state's case was weak, and turned on whether the jury believed petitioner's denial of the charges. Petitioner argues that the prosecutor's emphasis of his silence improperly allowed the jury to infer his guilt. Petitioner submits that but for counsel's failure to object, the outcome of the trial would have been different.

Petitioner's argument fails for multiple reasons. Petitioner's reliance on <u>State v. Marple</u>, 98 Or. App. 662, 666, 780 P.2d 772 (1989), is misplaced. Petitioner argues that his pre-arrest, pre-*Miranda* silence is protected under the Oregon Constitution. As stated in <u>Marple</u>, Article I, section 12 of the Oregon Constitution forbids the state in its case-in-chief from drawing attention to a defendant's right to remain silent prior to being in custody. <u>Id.</u> at 166 & n.2. There, the court held that the "defendant invoked his right to remain silent when he refused to answer the officer's question, and his refusal cannot be used as evidence against him." <u>Id.</u>

However, <u>Marple</u> is inapplicable here. In order to obtain federal habeas relief, petitioner needs to establish a violation of the federal Constitution or laws of the United States. 28 U.S.C. § 2254(a); <u>see, e.g.</u>, <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984)("A federal court may not issue the writ on the basis of a perceived error of state law."); <u>Gonzales v. Knowles</u>, 515 F.3d 1006, 1012 (9th Cir. 2008)(same).

Next, it is not clear that the prosecutor's statements were improper. Reviewing the prosecutor's entire closing, it appears that the statements refer to petitioner's silence when petitioner was questioned by his wife, as opposed to a comment on petitioner's invocation of his constitutional right not to testify or right to silence following his arrest. In fact, the prosecutor stated on at

least one occasion during the closing that petitioner had the right
not to testify.

Furthermore, the jury was instructed that "[t]he attorney's
statements and arguments are not evidence." Tr. vol. IV, p. 91.
"Jurors are presumed to follow the court's instructions." Cheney
v. Washington, 614 F.3d 987, 997 (9th Cir. 2010). And, arguments
of counsel carry less weight with the jury than the court's
instructions. Id. (quoting Boyde v. California, 494 U.S. 370, 384
(1990).

Even if the prosecutor's statements constituted misconduct,
when considered in context, I conclude that petitioner has failed
to demonstrate that the comments so infected the trial with
unfairness to make his conviction a denial of due process. Darden,
477 U.S. at 181.

Turning to Strickland, even if the prosecutor's closing
argument might have warranted an objection by trial counsel,
petitioner has not demonstrated that there is a reasonable
probability that an objection would have affected the outcome of
the trial under the circumstances. The evidence against petitioner
was very strong. B.S. consistently reported the abuse to his
mother, investigating officers, and CARES staff, and their
testimony mirrored that of B.S. B.S.'s pastor confirmed that
petitioner and B.S. worked alone at the church. B.S.'s mother
confirmed that petitioner spent time alone with B.S. and had the

opportunity to commit the abuse.  Additionally, the prosecutor's statements were not particularly inflammatory and were a relatively small portion of the closing.  Therefore, the state court could reasonably have concluded that counsel's failure to object did not undermine confidence in the outcome of petitioner's trial. Strickland, 466 U.S. at 695.

### 3.  appeals to vengeance and emotion

Petitioner submits that trial counsel was ineffective when he failed to object to the following statement in the prosecutor's closing argument:

> [The defendant] has the absolute legal right not to show any evidence if he chooses not to.  He can require the State to bring the child into court to provide its case, and ladies and gentleman of the jury, he came, and we did that.  He has the right to be given consideration like any other witness.  He has the right to have his testimony considered in the context of his circumstances and his age and abilities.  He has that right.  The defendant is not the only person in this courtroom that has rights.  The State is obligated to prove its case to you beyond a reasonable doubt.

Tr. Day 4, p. 27-28.

> Do not reward him for taking advantage of that abuse of a trust of a child by finding him not guilty.

> The State met its obligation in every respect to prove to you each and every material element of the charges.  [B.S.] has a right to justice, too.

Tr. Day 4, p. 40.

Having reviewed the prosecutor's closing argument in *toto*, petitioner has not demonstrated that the prosecutor's statements

constituted misconduct.   To be sure, the prosecutor's alleged appeals for vengeance are contained in two separate statements at least 10 pages apart in the transcript.   Read in context, the alleged appeals are not inflammatory or particularly emotion-laden. The statements clearly do not rise to due process violation.   Tan, 413 F.3d at 1112.  Moreover, petitioner has failed to demonstrate that but for counsel's failure to object to the prosecutor's statements, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

In summary, on the record before me, petitioner has not demonstrated that the state court's rejection of his claim was an unreasonable application of clearly established Federal law. Accordingly, petitioner is not entitled to habeas relief as set forth in ground nine.

Because petitioner has not demonstrated that petitioner's trial counsel rendered deficient performance in any regard, I reject petitioner's argument the cumulative effect of these multiple errors has caused him prejudice.   There can be no cumulative error where, as here, there is no constitutional error. Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

////

////

////

////

24 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, petitioner's amended petition for writ of habeas corpus (#13) is DENIED, and this proceeding is DISMISSED, with prejudice.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 27 day of JULY, 2012.

Garr M. King
United States District Judge

25 - OPINION AND ORDER